IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DANNY GILMORE,                        )
                                      )
            Plaintiff,                )
                                      )
                                      )   Case No. CIV-21-136-RAW-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
            Defendant.                )

### REPORT AND RECOMMENDATION

Plaintiff Danny Gilmore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. He has a high school education and past relevant work as an industrial cleaner. He alleges an inability to work beginning on March 20, 2017, which he later amended to July 30, 2019, due to limitations resulting from tuberculosis, airway blockage, breathing problems, and depression.

### Procedural History

On March 7, 2019, Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381,

3

*et seq*.) of the Social Security Act. His applications were denied initially and upon reconsideration. He elected to amend his onset date of disability to July 30, 2019, and withdrew his request for a hearing on his Title II application for benefits. On October 21, 2020, ALJ Edward M. Starr conducted a hearing by telephone from Fort Smith, Arkansas, in which Claimant participated. On November 10, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 6, 2021, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ (1) failed to properly evaluate his pulmonary condition and include limitations in the RFC supported by the evidence (with subparts); and (2) failed to resolve a conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") related to the jobs the ALJ determined Claimant could perform in the national economy.

4

**Consideration of Pulmonary Limitations**

In his decision, the ALJ found Claimant suffered from severe impairments of asthma, hemorrhoids, and depression. (Tr. 25). He determined Claimant could perform light work, except he was to avoid concentrated exposure to temperature extremes, wetness, and humidity. Also, he was to avoid pulmonary irritants like dusts, odors, and gasses. Further, Claimant was limited to simple, routine, and repetitive tasks. (Tr. 26).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of TSA screener, public area attendant, and officer helper, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 31-32, 53-54). As a result, the ALJ concluded Claimant had not been under a disability from March 20, 2017, through the date of the decision. (Tr. 32).

Claimant makes several arguments that the ALJ failed to properly consider evidence of his pulmonary limitations in the RFC, including spirometry test results. He specifically argues the evidence shows he has greater pulmonary limitations than what the ALJ accounted for in the RFC assessment, the ALJ failed to link his RFC determination to specific evidence, and the ALJ's finding that the state agency physicians' opinions were unpersuasive resulted in his having no opinion upon which to base the RFC limiting Claimant to light work with environmental limitations.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his

6

position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, an ALJ is not required to discuss all of the evidence in the record. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Moreover, a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In the decision, the ALJ discussed Claimant's March of 2019 annual visit with Johnathan Clark, D.O. Claimant complained of shortness of breath when mowing the lawn or walking at Wal-Mart, resulting in his having to stop and rest. He reported smoking since the age of 17, but he had recently decreased his smoking from as much as two packs to half a pack per day. Upon examination, Dr. Clark found Claimant to have a "normal respiratory rate and pattern with no distress" and "decreased breath sounds throughout." He noted Claimant's current problems included asthma and a history of tuberculosis and assessed Claimant with dyspnea (Tr. 27, 338-39).

Claimant requested that Dr. Clark perform a pulmonary function test for his disability application. Claimant underwent spirometry testing, which showed Claimant's lung age was greater

7

than 84 years. Dr. Clark's interpretation of the spirometry testing was "mild airway obstruction" and "[p]ost bronchodilator test not improved." (Tr. 27, 334-35). A chest X ray was also completed, with the impression of no acute cardiopulmonary finding, left upper lobe scarring/nodule, and hyperinflation of the lungs. (Tr. 27, 341). Claimant underwent another spirometry test in June of 2019, which showed "a FEV1/FVC percentage of 71 percent of the predicted mean." (Tr. 30, 363-66).

The ALJ also considered Claimant's September of 2020 examination through the Eastern Oklahoma Medical Center Emergency Department, wherein it was noted Claimant had smoked for 20 plus years and continued to smoke a half pack per day. Claimant complained of right-sided rib and anterior chest wall pain following an altercation. He had normal breath sounds. Chest X rays revealed no acute findings, including that "[v]isualized lung fields are clear." (Tr. 27, 589-94, 600-01).

The ALJ next discussed the opinion evidence when determining Claimant's RFC. He summarized in detail Claimant's June of 2019 consultative examination with Gerald Rana, D.O. Claimant complained of COPD and shortness of breath, chronic cough, and drainage. Claimant reported he had stopped smoking cigarettes in the last three to four months, but he was smoking THC for his depression. Upon review of his systems, however, Claimant denied issues with shortness of breath, cough, or wheezing. Upon

8

examination, his lungs showed "normal resonant percussion" with auscultation being described as "clear, normal vesicular breath sounds." Dr. Rana concluded that Claimant had a history of COPD, but during the exam, he showed no shortness of breath upon exertion. He noted Claimant's tuberculosis was not active and that Claimant's "albuterol MDI" inhaler helped with his COPD, but he could not afford the additional inhaler he was prescribed. (Tr. 30, 351-61). The ALJ found Dr. Rana's assessment persuasive because "it was supported by an in person examination and findings were largely consistent with those of other providers in the medical record." (Tr. 30).

The ALJ also considered the opinions from the state agency reviewing physicians. Regarding the physical assessment, he considered the functional findings of Nancy Armstrong, M.D., from June of 2019. Dr. Armstrong reviewed Claimant's medical records, specifically including Claimant's spirometry testing from June of 2019, and took into account his subjective complaints, and she determined Claimant had an RFC with no exertional limitations, but Claimant was to avoid concentrated exposure to extreme cold and heat, wetness, humidity, and fumes, odors, dusts, gasses, and poor ventilation. The environmental limitations were specifically based upon Claimant's asthma. (Tr. 29, 91-93). The ALJ then considered the findings of Walter Bell, M.D., from October of 2019. Dr. Bell reviewed Claimant's medical records, specifically noting his

spirometry testing in March of 2019 and June of 2019, and he concluded that based upon Claimant's asthma, he had the same functional limitations as those found by Dr. Armstrong. (Tr. 29-30, 115-17). The ALJ found the opinions unpersuasive noting instead that Dr. Rana's consultative exam of Claimant and the spirometry tests showed evidence of asthma and external hemorrhoids. He stated the RFC for light work with environmental limitations was supported by the opinions of the medical examiner and the medical evidence of record. (Tr. 30).

The ALJ further addressed Claimant's subjective complaints, including his difficulty breathing, and noted that even with this difficulty, Claimant continued to smoke. (Tr. 28). He determined his statements were "somewhat inconsistent with the medical record." Regarding his asthma, the ALJ noted that there are "many instances in treatment where [Claimant] does not mention any . . . asthma symptoms to his providers." He further provided examples of Claimant's daily activities as reported on his function report and on the third-party function report, indicating that Claimant's hemorrhoids and asthma were not as limiting as Claimant alleged. (Tr. 28-29).

Claimant relies on the unpublished opinion of *Fleetwood v. Barnhart*, 211 Fed. Appx. 736 (10th Cir. 2007), for the proposition that when the ALJ found the state agency physicians' opinions unpersuasive, he lacked any opinion evidence upon which to base

the RFC limiting Claimant to light work. Here, the ALJ found the state agency physicians' opinions unpersuasive, instead relying on the in-person examination of Dr. Rana and the other treatment evidence of record, including Claimant's spirometry testing. Even if the ALJ's decision could have been more explicit, he included the environmental limitations from the state agency physicians in the RFC and found Claimant had greater exertional limitations than what the state agency physicians concluded when he determined Claimant should be limited to light work. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (noting the claimant was not prejudiced by the opinion "because giving greater weight to [the opinion] would not have helped her.").

Moreover, the ALJ stated in the decision that he relied upon Dr. Rana's examination and Claimant's other treatment records, including his spirometry testing, when determining that Claimant had a physical RFC for performing light work with environmental limitations. This is evidence upon which the ALJ could base the RFC. *See Chapo*, 682 F.3d at 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. '[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'"), quoting *Howard*, 379 F.3d at 949; *see also Howard*, 379 F.3d at 949 ("We also reject claimant's implicit argument that there must be specific,

affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.").

Further, Claimant asserts that the lack of opinion evidence should have prompted the ALJ to further develop the record through a medical expert and/or a consultative examination. Here, there was no error by the ALJ for not obtaining a medical expert or ordering another consultative examination of Claimant. The record already contained the consultative examination by Dr. Rana and other treatment evidence, which was sufficient information for the ALJ to make an RFC determination. In any event, there was no request by counsel for a medical expert or another consultative examination of Claimant. (Tr. 39-56); *see Cowan v. Astrue*, 552 F.3d 1182, 1187-88 (10th Cir. 2008) (noting ALJ's responsibility for development of the record and that the duty is satisfied when the record contains sufficient information to make a disability determination and there was no request by counsel for further development), quoting *Hawkins*, 113 F.3d at 1167-68 ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (citation omitted).

This Court therefore finds that the ALJ appropriately considered the probative evidence of record, Claimant's subjective complaints, and the opinion evidence regarding Claimant's pulmonary condition, and properly formulated an RFC for light work with environmental and mental limitations.

## Step Five Determination

Claimant contends the ALJ's step-five determination that he can perform the jobs of TSA screener, public area attendant, and office helper is unsupported by the RFC and conflicts with the DOT. He asserts that the three positions are precluded because they require a reasoning level of two, which is inconsistent with an RFC for "simple, routine, repetitive" tasks. He contends that the ALJ failed to resolve this conflict between the DOT and the VE's testimony in the decision.

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that jobs with a reasoning level of three were inconsistent with an RFC that limited the claimant to "simple and routine work tasks." The court noted "that level-two reasoning requires the worker to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations.' DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC." *Id.*

13

Although *Hackett* specifically dealt with a question regarding jobs at a reasoning level of three, the Tenth Circuit has relied upon the portion of *Hackett* finding that a reasoning level of two was consistent with an RFC requiring "simple and routine work tasks" in the unpublished case of *Stokes v. Astrue*, 274 Fed. Appx. 675 (10th Cir. 2008). In *Stokes*, the court addressed whether jobs with a reasoning level of two were consistent with "simple, repetitive and routine work" – the exact issue in this case, – and it relied upon *Hackett* to reject the argument that "simple, repetitive and routine work" should be construed as a limitation to jobs with a reasoning-level of one. *Id*.[2]

A review of the hearing testimony reveals that the hypothetical posed to the VE, which was later incorporated by the ALJ into the RFC, included, among others, limitations that Claimant could perform "simple, routine, and repetitive tasks." (Tr. 53). Based on the ALJ's hypothetical question, the VE testified Claimant

---

[2] Claimant relies upon the case of *Paulek v. Colvin*, 662 Fed. Appx. 588 (10th Cir. 2016), for his contention that the jobs with level two reasoning exceed what he can perform with an RFC for "simple, routine, and repetitive tasks." *Paulek*, however, specifically dealt with the question of whether the claimant could perform level-three reasoning jobs with a limitation to "understanding, remembering, and carrying out simple instructions." *Id*. at 594. This Court finds *Stokes*' application of *Hackett* more persuasive, as it specifically addresses the issue in this case. Moreover, this district has routinely relied upon *Hackett* and determined level two reasoning is consistent with performing simple, routine, and repetitive tasks. *See, e.g., Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13, 2017)(finding "simple work" consistent with reasoning level of two); *Olsen v. Saul*, 2019 WL 4318486, at *4 (E.D. Okla. Sept. 12, 2019)(finding "simple tasks" consistent with reasoning level of two); *Amador v. Kijakzi*, 2022 WL 3043643, at *6 (E.D. Okla. Aug. 1, 2022)(same).

could not perform his past relevant work, but he could perform the jobs of TSA security screener (DOT # 372.667-010), public area attendant (DOT # 344.677-014), and office helper (DOT # 239.567-010), all jobs with a reasoning level of two. (Tr. 53-54). Based upon *Hackett* and *Stokes*, this Court finds that there is no conflict between the ALJ's RFC limiting Claimant to "simple, routine, repetitive tasks" and the level two reasoning jobs of TSA security screener, public area attendant, and office helper.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of September, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE